UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 15-101-DCR-5 |
| | ) | |
| V. | ) | |
| | ) | |
| EZEQUIEL ARIAS OROZCO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A jury convicted Defendant Ezequiel Orozco in 2016 of one count of conspiring to distribute controlled substances in violation of 18 U.S.C. § 846. [Record Nos. 176, 180] Orozco was sentenced to 140 months' imprisonment, followed by 5 years of supervised release. [Record No. 218] He is currently housed at Federal Correctional Institution ("FCI"), Fort Dix in New Jersey.

Orozco has now filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). [Record No. 326] He claims that his medical condition places him at risk of contracting severe illness from COVID-19. [*Id.* at pp. 5-8] Orozco also argues that conditions at FCI Fort Dix place him at a higher risk of being infected with COVID-19 because, due to the lack of space at the facility, inmates are "unable to practice quarantine [and] isolation protocols." [*Id.* at p. 10] In addition to claiming that his medical history and prison conditions constitute extraordinary circumstances, he alleges that reducing his sentence would be consistent with the statutory sentencing factors listed in 18 U.S.C. § 3553(a). [*Id.* at pp. 16-26] Specifically, Orozco mentions that his premature release would not endanger the public

because, after completing his criminal sentence, he will be transferred to the custody of the Department of Homeland Security, Immigration and Customs Enforcement and deported. [*Id.* at pp. 19-21]

The United States objects to the relief sought by Orozco. [Record No. 327] It contends that the threat of being infected with COVID-19 does not justify Orozco's premature release because the defendant has been fully vaccinated against the virus. [*Id.* at pp. 4-5] The government also contends that granting Orozco's motion would be inconsistent with 18 U.S.C. § 3553(a) because he committed significant crimes and repeatedly refused to accept responsibility for his actions. [*Id.* at p. 5] Finally, the United States explains that, even if Orozco was deported upon release from the custody of the Bureau of Prisons ("BOP"), his deportation would not likely deter him from again entering the United States in the future. [*Id.* at p. 6]

Orozco's motion will be denied because he has presented no extraordinary and compelling circumstance under section 3582(c) and the factors of section 3553(a) do not support the relief sought.

I.

Under 18 U.S.C. § 3582(c), a court may reduce a defendant's sentence if: (1) it finds that "extraordinary and compelling reasons" support a reduction; (2) a reduction "is consistent with applicable policy statements issued by the [United States] Sentencing Commission"; and (3) the court considers "the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."[1]  *United States v. Ruffin*, 978 F.3d 1000, 1004-05 (6th Cir. 2020) (citing *Id.*)).

---

[1] A sentencing court may reduce a defendant's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion

Compassionate-release motions may be denied "when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Because section 3582(c) does not define what constitutes an extraordinary and compelling circumstance, district courts have "full discretion . . . to determine whether an extraordinary and compelling reason justifies compassionate release." *See United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020).

However, "the mere fact that defining extraordinary and compelling 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (emphasis omitted) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005)). The Sixth Circuit recently recognized in *United States v. McCall* that when a statute does not define a phrase, courts should interpret that phrase "in accord with the ordinary public meaning . . . at the time of [the statute's] enactment." 56 F.4th 1048, 1055 (6th Cir. 2022) (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020)). The court found that "extraordinary and compelling" was understood to mean "unusual, rare, and forceful" at the time of the Sentencing Reform Act's adoption. *Id.*; *see also id.* (citing *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021)) ("The text of the compassionate-release statute gives way to a basic inference: What is 'ordinary' and routine cannot also be extraordinary and compelling.").

---

on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Orozco exhausted his administrative remedies with the BOP when the Warden at his institution did not respond to the inmate request that he filed on November 21, 2022. [Record No. 326-3]

Additionally, while a court is not bound by the policy statement in § 1B1.13 of the Sentencing Guidelines, it may consider the policy statement "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021).

## II.

### 1. Extraordinary and Compelling Reason for Relief

Orozco argues that his poor health constitutes an extraordinary circumstance that justifies reducing his sentence under section 3582(c). [Record No. 326, pp. 5-8] He states that he suffers from a host of health problems, including chronic kidney disease, prediabetes, latent tuberculosis, hyperlipidemia, hemorrhoids, gout, and chronic pain. [*See* Record No. 326-4.] The defendant explains that he should be released from custody because his medical ailments put him at greater risk of hospitalization or death if he is infected with COVID-19, despite being fully vaccinated and having once recovered from the virus. [Record No. 326, pp. 7-8] The United States argues in response that Orozco's risk of contracting COVID-19 does not constitute an extraordinary and compelling circumstance because the defendant has been fully vaccinated against the virus. [Record No. 327, p. 4 (citing *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021))]

As mentioned previously, while this Court is not bound by the language in the Sentencing Guidelines, the policy statement in § 1B1.13 is instructive in considering whether Orozco's medical condition constitutes an extraordinary reason for relief. The Application Notes to the policy statement provide that the medical condition of a defendant is an extraordinary and compelling reason for relief where, *inter alia*: (1) the defendant has a terminal illness; or (2) the defendant suffers from a "from a serious physical or medical

- 4 -

condition" or "deteriorating physical or mental health because of the aging process" which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A)(i)-(ii). Orozco's claim fails because he has not shown that his health has significantly deteriorated because of his various conditions or that he has not received adequate care from the BOP.

A review of the defendant's medical records reveals that his current conditions are being properly monitored, and Orozco has not alleged otherwise. [*See* Record No. 326-4.] Specifically, he does not allege that the BOP has not adequately treated his latent tuberculosis, or that he has experienced any resulting respiratory complications. *See, e.g., United States v. Rodriguez*, 468 F. Supp. 3d 681, 685 (E.D. Pa. 2020) (finding that defendant's latent tuberculosis diagnosis was not an extraordinary and compelling reason for relief because his condition was asymptomatic and he received adequate treatment). Similarly, Orozco's claims that his prediabetes and chronic kidney disease warrant his premature release fail because he has not demonstrated that those conditions are severe, or that FCI Fort Dix is not "equipped to meet his medical needs." *Hayes v. United States*, No. 5:17-CR-24, 2021 WL 4345782, at *5 (W.D. Ky. Sept. 23, 2021) (denying compassionate release for defendant with hypertension, hyperlipidemia, and type two diabetes because he did not show that his conditions were severe or that the facility where he was housed could not properly care for him).

The defendant's risk of contracting COVID-19 does not affect the analysis. The Sixth Circuit has recognized that "a defendant's incarceration during the COVID-19 pandemic— when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th

747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). This holding has subsequently been applied in cases involving defendants with health conditions that elevate their risk of contracting a serious case of COVID-19. *See, e.g., United States v. Justice*, No. 21-5841, 2022 WL 672277, at *1-2 (6th Cir. Feb. 28, 2022) (unpublished order); *United States v. Traylor*, 16 F.4th 485, 486-87 (6th Cir. 2021).

BOP records indicate that Orozco received both doses of the Moderna vaccine in 2021 and a booster shot in 2022. [Record No. 326-4, p. 7] If he desires to obtain further protection from COVID-19, he may receive additional booster shots in accordance with CDC guidance. *See COVID-19 Vaccine Implementation*, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Jan. 31, 2023). Additionally, Orozco admits that he experienced only "mild symptoms" when he was previously infected with COVID-19 in December 2020, and he does not claim that authorities at Fort Dix failed to adequately care for him at that time. [Record No. 326, p. 7] The defendant has failed to demonstrate that his risk of contracting COVID-19 (as a sole factor or in combination with other medical conditions) constitutes an extraordinary and compelling circumstance.

Orozco also argues that the inability of officials at FCI Fort Dix to prevent the spread of COVID-19 warrants reducing his sentence under section 3582(c). [Record No. 326, pp. 8-10] He alleges that due to the "sheer size of [the inmate] population," insufficient space, and lack of proper ventilation, prisoners are unable to adhere to proper quarantine protocols in case of a COVID-19 outbreak. [*Id.* at p. 10]

As a rule, "[c]ourts ought not to interfere with prison operations in the absence of constitutional deprivation." *United States v. Patino*, 452 F. Supp. 3d 705, 712 (E.D. Mich. 2020) (quoting *Vida v. Cage*, 385 F.2d 409, 409 (6th Cir. 1967)). The defendant has not

demonstrated that authorities at FCI Fort Dix have responded to the COVID-19 pandemic so unreasonably as to deprive him of his constitutional rights. And it is unlikely that he could. As discussed above, FCI Fort Dix provided two doses of the Moderna vaccine and a booster shot to Orozco, effectively mitigating his risk of contracting a severe form of COVID-19. The BOP's website indicates that the facility has appropriately modified operations to prevent the spread of the virus. *See FCI Fort Dix*, Bureau of Prisons, https://www.bop.gov/locations/institutions/ftd/ (last visited Jan. 31, 2023). Moreover, the BOP currently reports four active COVID-19 cases among inmates and zero active cases among staff at FCI Fort Dix. *See COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 31, 2023). "These comparatively low numbers indicate that the preventative measures being taken by the BOP . . . are having an effect." *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020) (denying compassionate release when facility where defendant was incarcerated had seven inmates and two staff with active COVID-19 cases).

But even if Orozco's claim that conditions at FCI Fort Dix put him at higher risk of contracting COVID-19 were true, it is too generalized to constitute an extraordinary reason for relief. *United States v. Farmer*, No. 19-cr-427, 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("Generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."). Because all the inmates at FCI Fort Dix presumably receive the same treatment, conditions at the prison do not constitute a reason why Orozco specifically should be released. *See United States v. Peterson*, No. 1:17-cr-20243, 2021 WL 2682819, at *3 (E.D. Mich., June 30, 2021) (finding that defendant's claims regarding confinement conditions did not warrant compassionate release because "many if not all of [the

defendant's] fellow inmates must endure similar hardships"). In summary, Orozco has not demonstrated that his health or conditions at FCI Fort Dix constitute extraordinary or compelling circumstances warranting his release.

### 2. § 3553(a) Factors

Even Orozco had presented extraordinary and compelling circumstances under section 3582(c), granting his motion would not be consistent with relevant statutory sentencing factors. Under 18 U.S.C. § 3553(a)(1)-(2), the undersigned considers "the nature and circumstances of the offense and the history and characteristics of the defendant;" as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" and "to protect the public from further crimes of the defendant." These factors counsel against granting the relief that the defendant requests.

Releasing Orozco well before his anticipated release date in October 2025 would not reflect the seriousness of his criminal conduct. As noted at the defendant's sentencing hearing, his extensive participation in drug trafficking activities and the large quantity of drugs involved warranted the sentence actually imposed without reduction. [Record No. 253, p. 11] To release Orozco prematurely would not give due weight to the undersigned's prior determination. And such would not promote respect for the law because Orozco consistently refused to accept responsibility for his conduct. He continually denied that he trafficked drugs, despite presentation of evidence of his own recorded statements to co-defendants that he had finished a delivery job and that "the snow" (referring to 28 kilograms of cocaine) would be arriving soon. *See United States v. Orozco*, 716 F. App'x 390, 393 (6th Cir. 2017).

Next, releasing Orozco prematurely would not adequately promote specific or general deterrence. The defendant claims that he would not pose a threat to the public if released because he is subject to immediate deportation following the completion of his sentence. [Record No. 326, p. 19] But as the government correctly notes, Orozco has been removed from the United States twice before, and his previous removal orders did not deter him from unlawfully entering the United States a third time before committing the instant offense. [*See* Record Nos. 227, ¶ 29, 327, p. 6.] His claim that he would not return to the United States if again deported lacks credibility. Granting Orozco's motion would neither reflect the seriousness of the offense for which he is currently being incarcerated nor promote deterrence under section 3553(a).

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Orozco's motion for compassionate release [Record No. 326] is **DENIED**.

Dated: February 1, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky